In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3736

GREGORY K. WEATHERBEE,

*Plaintiff-Appellant,*

*v.*

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, New Albany Division.
No. 4:09-cv-00103-TWP-WGH—**Tanya Walton Pratt**, *Judge.*

ARGUED APRIL 7, 2011—DECIDED AUGUST 10, 2011

Before CUDAHY, MANION, and HAMILTON, *Circuit Judges.*

CUDAHY, *Circuit Judge.* Gregory K. Weatherbee applied
for Social Security disability insurance benefits and sup-
plemental security income payments after suffering
serious injuries in a motorcycle crash. Weatherbee's
application was initially denied by the Social Security
Administration. An Administrative Law Judge (ALJ) also
denied Weatherbee's claim after conducting a hearing,

finding that Weatherbee could perform a significant number of jobs. Weatherbee appealed the ALJ's denial of his claim to the district court, who found that the decision to deny his application was supported by substantial evidence. We affirm.

## I. Background

In June 2006, Gregory Weatherbee, an employee of a heating and cooling company, was involved in a motorcycle crash and sustained serious injuries. While Weatherbee eventually recovered from the accident, he continues to suffer from a litany of physical impairments: he has significant attention and concentration problems; he suffers from regular headaches; his memory and sense of balance have been impaired; and he has lost functionality in his dominant arm. Since the motorcycle crash, Weatherbee has been unemployed.

In July 2006, Weatherbee sought Social Security disability insurance benefits and supplemental security income pursuant to the Social Security Act. *See generally* 42 U.S.C. § 423(d); 42 U.S.C. § 1382c(a)(3). The Commissioner of Social Security (the Commissioner) first denied Weatherbee's application on February 9, 2007, and again when it was submitted for reconsideration on May 7, 2007.

Weatherbee requested review of the Commissioner's denials and, on December 1, 2008, participated in a hearing before an ALJ. During the hearing, the ALJ solicited testimony from Weatherbee and his mother regarding his injuries and their effect on his daily life. The

ALJ also solicited testimony from a Vocational Expert (VE) concerning the ability of an individual with Weatherbee's limitations to work in the economy. Before he began questioning the VE, the ALJ provided the following instruction:

> In your responses, ma'am, I'd like you to refer to jobs and their descriptions as they're found in the *Dictionary of Occupational Titles*. Should there be any conflict between your testimony and the material to be found in the *DOT*, kindly identify the conflict and resolve it by [citing] the source of the information, if you would.

The ALJ proceeded to describe an individual with physical capabilities matching those of Weatherbee and asked what types of work such a person could perform.[1]

---

[1] When questioning the VE about Weatherbee's ability to work, the ALJ described Weatherbee's impairments in the following manner: "I want you to assume a person of the same age, education, and past work experience as Mr. Weatherbee. I want you to assume that such a person is limited to the performance of sedentary work, primarily because of balance problems. Such a person would have unlimited use of the non-dominant left hand; could use the dominant right hand for fine manipulation only but not for gripping, turning, and twisting. Such a person should be limited to simple tasks, both because of attention and concentration problems, and because of possible memory problems. Should not—any work should not require interaction with the public and should not be fast paced or quota driven."

The VE testified that the limitations listed by the ALJ would preclude an individual from working as an "HVAC man," Weatherbee's former profession. She went on to state, however, that an individual with these limitations could do unskilled sedentary work and identified three types of occupations he could perform.

First, the VE stated that an individual with the limitations described by the ALJ could perform "some inspector jobs," adding that there were 493 inspector jobs in Indiana and 15,000 jobs in the U.S. She cited the position of weight tester as an occupational title falling within this category of jobs. Second, the VE stated that such an individual could perform "some general office clerk jobs," which she claimed constituted 1,215 jobs in Indiana and approximately 64,200 jobs nationally. She provided "document preparer" as a sample occupational title of an office clerk job that someone like Weatherbee could perform. Finally, the VE testified that there were "some production jobs" that such an individual could perform. She said that there were 2,200 of these jobs in Indiana and 60,600 jobs nationally, all of which could be performed with the hypothetical limitations posed. She specified "fabrication finisher" as an example of an occupational title within this set of jobs.

The ALJ accepted the VE's testimony concerning the types of occupations that Weatherbee could perform as well as the availability of such work. He explicitly stated that the testimony was consistent with the information provided in the *Dictionary of Occupational Titles* (*DOT*) and concluded that the government had established that, despite his injuries, Weatherbee was able to work in

a significant number of positions. Accordingly, he held that Weatherbee was not disabled for the purposes of the Social Security Act and denied his application for benefits. Weatherbee sought review of the ALJ's decision by the Social Security Appeals Council, which declined his request on May 29, 2009. Because the Appeals Council declined review, the ALJ's ruling constituted the Commissioner's final, appealable decision. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). Weatherbee sought review of this decision in the United States District Court for the Southern District of Indiana. On September 29, 2010, the district court affirmed the ALJ's decision. On November 27, 2010, Weatherbee filed a notice of appeal to this court.

## II. Analysis

We review an ALJ's disability determination deferentially, upholding it if it is supported by "substantial evidence." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Evidence is substantial if a reasonable person would accept it as sufficient to support the decision. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). While we will not hesitate to reverse a ruling that lacks evidentiary support, we will not reweigh the evidence that the parties presented or substitute our judgment for that of the ALJ. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

To receive disability benefits under the Social Security Act, a claimant must be "disabled" as defined by the Act. 42 U.S.C. § 423(a)(1)(E). A claimant qualifies as disabled if he is unable to "engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Moreover, a claimant's physical or mental impairment or impairments must be of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

When determining whether or not an individual is disabled, we use a five-step sequential analysis. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience

to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Id.* at 674. The claimant bears the burden of proof in each of the first four steps. *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). The government bears the burden of proof at the fifth step and must present evidence establishing that the claimant possesses the residual functional capacity[2] to perform work that exists in a significant quantity in the national economy. 42 U.S.C. § 423(d)(2)(A); *Liskowitz v. Astrue*, 559 F.3d 736, 740 (7th Cir. 2009).

ALJs often rely heavily on two sources of occupational information to determine whether the government has met its burden: the *DOT* and Vocational Experts. The *DOT*, published by the Department of Labor, provides standardized occupational information, including the most typical characteristics of jobs as they exist throughout the American economy. It classifies jobs based on a number of factors, such as worker actions, exertional level and skill requirements in order to facilitate the placement of applicants in positions that match their qualifications. The *DOT* has played a prominent role in social security hearings and ALJs are required to take administrative notice of the *DOT* under Social Security regulations. 20 C.F.R. § 404.1566(d)(1); 20 C.F.R. § 416.966(d)(1).

---

[2] Residual functional capacity is defined as "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a).

Vocational Experts often supplement the information provided in the *DOT* by providing an impartial assessment of the types of occupations in which claimants can work and the availability of positions in such occupations. *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009). The decision whether to employ a VE at a hearing is a matter entrusted to the discretion of ALJs, *Ehrhart v. Secretary of H.H.S.*, 969 F.2d 534, 540 (7th Cir. 1992), but once an ALJ decides to rely on a VE's testimony, he must make sure that the testimony comports with the rules set forth in the Commissioner's Social Security Rulings. For instance, Social Security Ruling 00-4p requires ALJs to ask whether a VE's testimony conflicts with information provided in the *DOT* before relying on the VE's testimony. Social Security Ruling 00-4p at 4; *Overman v. Astrue*, 546 F.3d 456, 462-63 (7th Cir. 2008). Ruling 00-4p does not require ALJs to wholly disregard a VE's testimony because part of it disagrees with the *DOT*, but it does require ALJs to resolve discrepancies between the two before relying on the conflicting testimony. *Overman*, 546 F.3d at 464; *Jens*, 347 F.3d at 213.

On appeal, Weatherbee argues that the ALJ committed three discrete errors when determining whether he could work in other positions and that each of these errors is serious enough to merit setting aside the ALJ's findings. First, he contends that the ALJ did not adequately inquire into whether the VE's testimony was consistent with the *DOT*. Second, he asserts that the ALJ failed to investigate and resolve discrepancies between the VE's testimony and the *DOT*. Finally, he challenges the ALJ's determination that the jobs he could

perform existed in significant numbers. These objections get us to a fine-tuned disentanglement of the relevant arguments.

**A. The ALJ did not err by inquiring whether the VE's testimony conflicted with the *DOT* prior to soliciting her substantive testimony.**

Weatherbee claims that Social Security Ruling 00-4p requires ALJs to ask whether a VE's testimony is consistent with the *DOT after* the VE has provided her substantive testimony. Because the VE at Weatherbee's hearing had not yet testified regarding the types of jobs that somebody with Weatherbee's capabilities could perform when the ALJ made this inquiry, Weatherbee urges us to find that the ALJ's inquiry did not satisfy Ruling 00-4p's requirements.

We reject Weatherbee's claim that Ruling 00-4p requires ALJs to inquire about conflicts between a VE's testimony and the *DOT* after the VE provides her substantive testimony. The text of the Ruling only requires ALJs to inquire about conflicts "before *relying*" on a VE's testimony, but does not specify whether this inquiry should (or must) occur before or after a VE testifies. *See* Social Security Ruling 00-4p ("[T]he adjudicator must elicit a reasonable explanation for the conflict *before relying* on the VE . . . evidence."). As several district courts have noted, we have not read a temporal requirement into the Ruling 00-4p and have refused to establish a singular method by which ALJs must elicit potential conflicts. *See Howze v. Astrue,* 2010 WL 3075524, at *1-2 (N.D. Ill. Aug. 3,

2010); *Harris v. Astrue*, 646 F. Supp. 2d 979, 995 (N.D. Ill. 2009).

A review of the transcript from the administrative hearing establishes that the ALJ satisfied the Ruling's requirement. The ALJ's instruction addressed the issue of conflicting testimony before the VE offered her substantive testimony. The VE agreed under oath to identify and resolve any conflict between her testimony and the *DOT*. Nothing in the hearing's transcript suggests that the VE disregarded the ALJ's instructions. While we do not foreclose the possibility that an ALJ's inquiry into the consistency of a VE's testimony with the *DOT* could be rendered inadequate due to its timing in other circumstances, we find that the instructions given by the ALJ in this case were sufficient.

**B.  The ALJ did not err in relying on the VE's testimony because there was no apparent conflict between this testimony and the *DOT*.**

Weatherbee argues that the ALJ's ruling should be set aside because it was based upon VE testimony that conflicted with the *DOT*. Ruling 00-4p requires ALJs to investigate and resolve any apparent conflict between the VE's testimony and the *DOT*. Social Security Ruling 00-4p; *Overman*, 546 F.3d at 463. A conflict is apparent if it is "so obvious that the ALJ should have picked up on [it] without any assistance." *Overman*, 546 F.3d at 463. When there is an apparent conflict, ALJs are required to obtain reasonable explanations for the conflict. *Id*. Weatherbee

claims that the ALJ's ruling should be set aside because the ALJ failed to resolve apparent conflicts between the VE's claim that somebody with Weatherbee's impairments could perform some general office clerk and production worker occupations and the *DOT* entries for these jobs.[3] Weatherbee does not contest the validity of the VE's testimony regarding inspector occupations.

### 1. General Office Clerk Jobs

Weatherbee contends that the VE's testimony regarding his ability to perform "some general office clerk jobs" obviously conflicted with the *DOT* and that the ALJ failed to investigate these discrepancies. He claims that the VE referenced only the occupation of Office Clerk (listed at Section 209.562-010 of the *DOT*) when stating that "[t]here would be some general office clerk jobs that are [classified as] unskilled sedentary." Weatherbee believes that the VE's testimony directly and apparently conflicts with the *DOT* because the *DOT* entry for Office Clerk describes the job as non-sedentary and semi-skilled.

We reject Weatherbee's interpretation of the VE's testimony. When read in the context of the VE's adjacent testimony, it is clear that the VE's discussion of "office clerk jobs" was meant to refer to a broad category of jobs

---

[3] The term "occupation," as used by the *DOT*, refers to a collection of jobs, many of which vary in required levels of activity and qualifications.

that the *DOT* describes as clerical, not to the single occupation listed in Section 209.562-010 of the *DOT*. Almost immediately after stating that an individual with Weatherbee's impairments could work in some "general office clerk jobs," the VE added that a "sample occupational title would be Document Preparer." The fact that the VE provided the Document Preparer occupation—listed in Section 249.587-018 of the *DOT*—as an example of a clerk position clearly indicates that she was using the term clerk in a general sense. The VE's use of the term in this manner is consistent with its usage throughout the *DOT*. *See, e.g.*, Dep't of Labor, *Dictionary of Occupational Titles* §§ 221-229, 243-249 (occupational entries for a variety of different clerk positions). Hence, the VE's testimony regarding Weatherbee's ability to perform some general office clerk positions did not conflict with the *DOT*.

### 2. Production Worker Jobs

Weatherbee also claims that the VE's testimony regarding his ability to work certain production worker jobs conflicted with the *DOT*. First, he contends that the VE's testimony should not have been relied on by the ALJ because the sample occupational title identified by the VE—"fabrication finisher"—does not exist in the *DOT*. Second, he argues that the VE's testimony conflicted with the DOT because the physical demands and skill requirements of many production worker jobs preclude an individual with Weatherbee's limitations from obtaining employment in those positions.

We reject Weatherbee's assertion that the ALJ erred when it failed to resolve the discrepancy between the sample occupational title described by the VE and the title for the same job that is listed in the *DOT*. While Weatherbee is correct in his assertion that the job of "fabrication finisher" is not listed in the *DOT*, his argument that the *DOT* does not contain any job titles similar to "fabrication finisher" misses the mark. The job of "finisher" is listed in Section 731.687-014 of the *DOT*, is described as an occupation dealing with the fabrication of dolls and is quite clearly the occupational listing that the VE was referring to in her testimony. *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (stating that a minor discrepancy between the job title given by a VE and the title listed in the *DOT* is insufficient to create an apparent conflict). Given that the "finisher" job is listed as being appropriate for individuals who can work only in sedentary and unskilled positions, there was no apparent conflict between the VE's testimony and the *DOT* and, hence, no failure on the part of the ALJ.

Weatherbee's second contention of error fares no better than his first. The fact that there are a large number of production jobs that are beyond the capabilities of sedentary, non-skilled laborers is not, on its own, sufficient to establish an apparent conflict between the VE's testimony and the *DOT*. The fifth step in the disability analysis framework focuses only on the types of work that the claimant can perform, not the positions the claimant is precluded from working. The VE testified that Weatherbee could work in the least de-

manding subset of production worker jobs and identified a production job that was appropriate for sedentary, unskilled individuals like Weatherbee. Because there was no apparent conflict with the VE's testimony and Weatherbee did not present evidence establishing that he could not work any type of production job, the ALJ did not err by relying on the VE's opinion.

### C. The ALJ appropriately found that Weatherbee is qualified to work in positions that are available in significant number.

Finally, Weatherbee argues that the ALJ's decision should be reversed because the government did not establish that he could work jobs that exist in significant numbers in the economy. More specifically, he contends that the government failed to meet its burden because of the flaws in the VE's testimony concerning clerk and productions jobs discussed above.

We recently stated that, in the context of step five of our disability benefits analysis, "it appears well-established that 1,000 jobs" constitutes a significant number. *Liskowitz*, 559 F.3d at 743. The VE stated that an individual with Weatherbee's limitations could work in some clerk, production and inspector jobs and that there were approximately 3,900 of these positions available in Indiana and over 140,000 of these positions available nationally—numbers well above the threshold for significance. As stated above, Weatherbee has failed to establish that there were apparent conflicts between the VE's testimony concerning clerk and production jobs and the

*DOT*. Further, Weatherbee has not challenged the VE's claims that he could work in inspector positions or that there were 493 inspectors jobs in Indiana. Hence, the ALJ did not err when he accepted the VE's estimates and found that Weatherbee is capable of working in positions that are available in significant numbers.


### III. Conclusion

Because the Commissioner's decision to deny benefits was supported by substantial evidence, the judgment of the district court is

AFFIRMED.