NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 7, 2021
Decided July 22, 2021

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 20-2897

| | |
|---|---|
| LUCINDA L. MITCHELL,<br>    *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Southern District of Indiana,<br>Indianapolis Division. |
| v. | No. 19-cv-02114-MPB-TWP |
| KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security,<br>    *Defendant-Appellee*. | Matthew P. Brookman,<br>*Magistrate Judge*. |

**O R D E R**

Lucinda Mitchell applied to the Social Security Administration for disability benefits, but an administrative law judge denied her application after finding that Mitchell could perform light work with limitations—a determination upheld by the district court. On appeal, Mitchell argues that the ALJ erred by relying on a vocational expert's testimony that conflicted with the *Dictionary of Occupational Titles*. We agree that the ALJ erred by relying on some of the expert's testimony. But the error was harmless because the ALJ sufficiently explained potential conflicts between the expert's other testimony and the *Dictionary*, and substantial evidence supports her decision. Therefore, we affirm.

Mitchell, now 51 years old, applied for disability insurance benefits and supplemental security income in March 2015, asserting that she has been disabled since May 1, 2013. She claimed that fibromyalgia, arthritis, carpal tunnel syndrome, chronic pain and fatigue, lower back pain, and sleep issues preclude her from working. After her application was denied initially and on reconsideration, Mitchell requested a hearing before an ALJ. There, the ALJ called a vocational expert as a witness to testify about the jobs available to people with limitations similar to Mitchell's.

The ALJ asked the vocational expert whether jobs existed in the national economy for three hypothetical persons. The first could perform light work, including "frequent reaching, occasional overhead reaching, frequent handling, fingering and feeling" with either upper extremity, but could "never do any crouching." The expert testified that this person could not perform Mitchell's past work as an inspector or a cashier and stocker. But this person could work as a weight recorder (25,000 jobs nationally), a mail clerk (40,000 jobs nationally), or a front desk clerk (30,000 jobs nationally). Next, the ALJ posited someone with the same limitations, but with the ability to do frequent reaching and occasional overhead reaching with only the right-dominant upper extremity and "no other manipulative limitations." The expert's opinion about that person's work ability was the same. Finally, the ALJ described a person who "could never do any overhead reaching" and "could only do occasional handling, fingering and feeling" with both upper extremities. The expert explained that such a person could still work as a weight recorder or a front desk clerk, but that the number of nationally available jobs would decrease to 10,000 and 20,000, respectively. The expert went on to explain that this person could also work as a furniture rental clerk, with about 15,000 jobs nationally.

Mitchell did not ask the expert about any of these jobs at the hearing. Her only question was whether the hypothetical person described by the ALJ could perform any job if she missed more than two days of work per month. (The answer was no.)

After Mitchell's questioning, the ALJ asked the expert if her opinions were "consistent" with the *Dictionary of Occupational Titles* and its companion publication, and the expert said yes. The ALJ then asked whether any portions of her opinions were not derived from the *Dictionary*; the expert responded that the *Dictionary* "does not address directional reaching," distinguish between dominant and non-dominant upper extremities, or address the number of available jobs. The expert clarified that her testimony on those issues was based on her "education, experience and knowledge."

After the hearing, the ALJ issued the decision under review, concluding that Mitchell was not disabled. Applying the standard five-step analysis, *see* 20 C.F.R. § 416.920(a)(4), the ALJ found that, despite Mitchell's eleven "severe" impairments, Mitchell could perform light work, *see* 20 C.F.R. §§ 404.1567(b), 416.967(b), with certain restrictions. As relevant here, Mitchell could never crouch, could only occasionally handle, finger, and feel with her bilateral upper extremities, and could never reach overhead but could frequently reach in all other directions. Based on this residual functional capacity, the ALJ determined that Mitchell could not perform her past work but could perform other jobs that exist in significant numbers in the national economy.

The ALJ based this Step Five conclusion on the testimony of the vocational expert. The ALJ determined that Mitchell could be employed in any of 10,000 jobs as a weight recorder; 20,000 jobs as a front desk clerk; or 15,000 jobs as a furniture rental clerk. *See* U.S. DEP'T OF LABOR, *Dictionary of Occupational Titles*, 222.387-074, 295.357-018, 340.367-010 (4th ed. 1991). The ALJ found that the expert's opinion was consistent with the *Dictionary*, or, when a subject was not addressed by the *Dictionary*, it was "well-supported" by the expert's professional experience, education, and knowledge.

The Appeals Council denied review, making the ALJ's decision final. *See* 20 C.F.R. § 404.981. Mitchell challenged the decision in district court, arguing that it should be reversed because the ALJ relied on vocational-expert testimony that conflicts with the *Dictionary*. The court upheld the denial of benefits.

On appeal, Mitchell argues that the ALJ erred by relying on the vocational expert's testimony because it conflicts with the *Dictionary of Occupational Titles*. For instance, the *Dictionary* describes the job of furniture rental consultant as requiring occasional crouching, yet the expert testified that a person who could never crouch could perform it. *See Dictionary*, 295.357-018. Similarly, the *Dictionary* describes the jobs of weight recorder and front desk clerk as requiring frequent handling, but the expert testified that a person with only occasional handling capability could do those jobs. *See id.* 222.387-074, 340.367-010.

Mitchell contends that this issue requires reversal, first, because the ALJ violated Social Security Ruling 00-4p by relying on the expert's testimony without resolving conflicts with the *Dictionary*. *See Pol'y Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions*, SSR 00-4p (S.S.A. Dec. 4, 2000). That Ruling requires an ALJ to ask whether an expert's testimony conflicts with the *Dictionary*, as the ALJ did here. *See* SSR 00-4p. If expert testimony "appears to conflict" with the *Dictionary*, the ALJ must

inquire further and obtain "a reasonable explanation for the apparent conflict" and resolve any apparent conflict in her decision. *Id.*; *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). A claimant may raise a violation of the Ruling on appeal without having raised it before the ALJ because the Ruling imposes an affirmative duty on the ALJ, but the claimant must show that the apparent conflict is obvious. *Overman*, 546 F.3d at 463.

Because the ALJ elicited a reasonable explanation for potential inconsistencies between the *Dictionary* and the expert's testimony about the handling obligations of weight recorders and front desk clerks, she did not violate the Ruling by relying on that testimony. One reasonable explanation for a potential discrepancy with the expert's testimony is that the information is not included in the *Dictionary*. *See* SSR 00-4p; *Overman*, 546 F.3d at 464 (noting that ALJ may give expert testimony precedence when her knowledge and experience exceed the *Dictionary*). Because the *Dictionary* "lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings," an ALJ may rely on an expert's testimony that provides "more specific information" about a job than the *Dictionary* based on the expert's experience. SSR 00-4p; *see also Jones v. Astrue*, 619 F.3d 963, 978 (8th Cir. 2010) (expert's testimony that job could be performed below requirements listed in *Dictionary* was reasonable explanation for conflict). That is what the ALJ did here. The expert explained that *some* jobs as a weight recorder or front desk clerk would require only occasional handling and would accommodate the other limitations proposed by the ALJ. And the ALJ expressly relied on that testimony when determining that a total of only 30,000 of those two jobs existed for a person with Mitchell's residual functional capacity.

Another possible conflict between the expert's testimony and the *Dictionary*—which the ALJ did *not* inquire about or address in her decision—pertains to the crouching requirements for furniture rental clerks. The expert's testimony that a non-croucher could do the job was inconsistent with the *Dictionary's* description of the job as requiring occasional crouching. Even if we were to conclude that this was an apparent and obvious conflict, though, the ALJ's failure to resolve it would not merit reversal. Leaving aside the position of furniture rental clerk, the ALJ still found that enough jobs—30,000—are available to Mitchell to allow her to work. *See Weatherbee v. Astrue*, 649 F.3d 565, 572 (7th Cir. 2011) (noting that jobs with as few as 1,000 positions nationally are sufficient occupational base). Thus, any error was harmless.

Next, Mitchell argues that the ALJ's decision was unsupported by substantial evidence at Step Five. Again she challenges the ALJ's reliance on the vocational expert's testimony, but this time because the expert wrongly stated that her testimony was

consistent with the *Dictionary*. Because the testimony was inaccurate, Mitchell contends, it was insufficiently reliable evidence for the agency to rely upon at Step Five.

The ALJ's decision was supported by substantial evidence—a burden that can be met with expert testimony alone. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1155–56 (2019). True, there is insufficient support for the ALJ's conclusion that Mitchell could work as a furniture rental clerk despite her inability to crouch because it was based on erroneous testimony inconsistent with the *Dictionary* that the ALJ did not clarify. *See Overman*, 546 F.3d at 464. But one mistake in the expert's testimony does not require the ALJ to reject all of it. And the expert explained how she expanded upon the *Dictionary's* entries for the weight recorder and front desk clerk positions by relying on her experience, education, and knowledge to opine that 30,000 of those jobs would be available to a person with Mitchell's reaching and handling limitations. *See Overman*, 546 F.3d at 464; *cf. Brown v. Colvin*, 845 F.3d 247, 254–55 (7th Cir. 2016) (finding that ALJ could not rely on expert's testimony that some jobs could be performed at exertional level lower than that in the *Dictionary* but did not specify how many).

Mitchell has never challenged the expert's experience or knowledge as an adequate foundation for her testimony, nor has she provided any contrary evidence. The ALJ was therefore entitled to rely on the expert's opinion about those two jobs. *See Biestek*, 139 S. Ct. at 1155–56; *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) (ALJ was entitled to credit expert testimony when claimant did not challenge its evidentiary basis at hearing). And that is enough evidence to support the conclusion at Step Five.

AFFIRMED