In the

# United States Court of Appeals
## For the Seventh Circuit

No. 22-1488

KARRINE MILHEM,

*Plaintiff-Appellant,*

*v.*

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:20-cv-488-SLC — **Susan L. Collins**, *Magistrate Judge.*

ARGUED SEPTEMBER 28, 2022 — DECIDED NOVEMBER 4, 2022

Before EASTERBROOK, HAMILTON, and BRENNAN, *Circuit Judges.*

BRENNAN, *Circuit Judge.* To determine whether a claimant is eligible for Social Security disability benefits, an Administrative Law Judge applies the familiar five-step sequential evaluation to assess whether that claimant can engage in substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(1); 416.920(a)(1). In step five, the ALJ considers whether the claimant is unable to adjust to "work (jobs) that … exist[s] in

significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c), 416.960(c). This case presents the question: what number of jobs is "significant" for step five?

## I. Background

Karrine Milhem applied for Social Security disability insurance benefits and supplemental security income. She alleged that, as of November 19, 2018, several conditions limited her ability to work, including heart problems, back problems, alcohol withdrawal, anxiety, depression, and hallucinations. When Milihem applied she was thirty-eight years old, had completed three years of college, and had previously worked as a canvasser, receptionist, portrait photographer, and graphic designer. Her claims were denied initially and upon reconsideration.

Milhem then sought review by an Administrative Law Judge. At a Social Security hearing an ALJ uses a five-step evaluation to assess whether a claimant may engage in substantial gainful activity, inquiring whether:

1.  the claimant is presently employed;

2.  the claimant has a severe impairment or combination of impairments;

3.  the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity;

4.  the claimant's residual functional capacity leaves him unable to perform his past relevant work; and

5.  the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Prill v. Kijakazi*, 23 F.4th 738, 746–47 (7th Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)). The claimant has the burden to prove steps one through four of the analysis, and the burden shifts to the Commissioner at step five. *Id.* at 747.

At a hearing held in May 2020, the ALJ heard testimony from Milhem and a vocational expert. After Milhem testified, the ALJ asked the vocational expert to classify Milhem's prior work. Based on the *Dictionary of Occupational Titles* (*DOT*), the vocational expert testified that Milhem's prior work as a canvasser was classified as light work and was light as actually performed, and her work as a receptionist was classified as sedentary work and was medium as actually performed. Milham had also previously been self-employed as a portrait photographer and as a graphic designer. The vocational expert classified the portrait photography work as light work and the graphic design work as sedentary work, together considered heavy as performed.

The ALJ then asked whether a "hypothetical individual of the claimant's age, education, and with the [same] past jobs" was able to perform Milhem's past work, with the following limitations: the individual can "perform work at the light exertional level … that can be learned in 30 days or less with simple, routine, tasks, simple work related decisions, [and] routine workplace changes" and "is able to remain on task in two hour increments with occasional interaction with coworkers, supervisors, and the general public." This question reflected the ALJ's conclusion that the evidence supported limiting Milhem's work to that which can be learned in thirty days or less, that Milhem could stand or walk for at least two hours in an eight-hour workday, and that Milhem

"could make judgments commensurate with functions of simple, repetitive tasks," "respond appropriately to brief supervision and interactions with coworkers and work situations," and "deal with routine changes in a work setting." The vocational expert responded that such a hypothetical individual could not perform Milhem's past work, but that there was other work she could perform. This included work as a router, price marker, and cafeteria attendant, of which there were approximately 53,000, 307,000, and 63,000 jobs in the national economy, respectively.

The ALJ further inquired into how changing the exertion level to sedentary would impact the number of jobs available. This question reflected the ALJ's review of the evidence that Milhem "could at least perform sedentary work." The vocational expert testified that such an individual could perform the work of an addresser, table worker, or document preparer, of which there were approximately 19,000, 23,000, and 47,000 jobs in the national economy, respectively.

Based on Milhem's specific circumstances, the ALJ assessed the availability of those positions. She asked what the requirements for those occupations were with respect to "being on task in the workplace," reflecting evidence that Milhem was able to remain on task for two-hour increments. The vocational expert explained that an individual could be off task for approximately ten percent of the workday, exclusive of breaks, and that termination would result if an individual was continuously off task more often. The ALJ also inquired into the normally scheduled breaks during the workday for these positions, whether the positions would accommodate more or longer breaks, and what the tolerance for absences was in these positions. The vocational expert

responded that there are usually three scheduled breaks per day, the permissibility of additional or longer breaks depended on their frequency and duration, and workers should generally not accumulate more than twelve absences in one year. The vocational expert explained that her answers to the ALJ's questions were based on her experience and an article on absenteeism, and that they were consistent with the *DOT*.

The vocational expert testified that there were 89,000 jobs in the national economy that Milhem could perform, adding together the number of jobs available as an addresser (19,000), table worker (23,000), and document preparer (47,000). Based on this testimony, and "considering [Milhem's] age, education, work experience, and residual functional capacity," the ALJ found at step five that there were a significant number of jobs that Milhem could perform. The ALJ thus concluded that Milhem was not under a qualifying disability as of November 19, 2018.

The Social Security Appeals Council denied Milhem's request for review, rendering the ALJ's decision final. She then appealed to the district court,[1] arguing that the ALJ's findings on step five were not supported by substantial evidence.[2] Milhem contended that the Commissioner failed to meet the step-five burden because the ALJ did not determine how many jobs Milhem could perform as a percentage of total jobs

---

[1] The parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).

[2] Milhem also challenged the ALJ's step-three finding that she did not meet listings 12.03, 12.04, and 12.06 of the Social Security Administration's Listing of Impairments. The district court rejected this argument, holding that the ALJ's determination was supported by substantial evidence. Milhem does not appeal this holding, so we do not address it further.

in the national economy. Per Milhem, the ALJ did not ask the vocational expert how many jobs existed in the national economy in total, so "the percentage calculation necessary to gauge significance was not made." Milhem also argued that because 89,000 jobs accounted for just 0.0567% of the total jobs in the national economy, the ALJ failed to identify a significant number of jobs Milhem could perform.

The district court affirmed the ALJ's determination. It explained that although "this circuit lacks clear guidance on what constitutes a 'significant number' of jobs in the national economy," 89,000 jobs met that threshold. The district court referred to *Weatherbee v. Astrue*, 649 F.3d 565, 572 (7th Cir. 2011), in which this court determined that 140,000 representative jobs in the national economy was "well above the threshold for significance." Ultimately, the district court grounded its conclusion in an unpublished decision, *Knapp v. Saul*, 2021 WL 536121, at *4–5 (N.D. Ind. Jan. 27, 2021), *report and recommendation adopted*, 2021 WL 536483 (N.D. Ind. Feb. 12, 2021), where it had found that 67,500 jobs in the national economy was a significant number.

## II. Discussion

Milhem offers three arguments for why the step-five determination was flawed:

1.  There must be a regulation defining how many jobs are "significant" for a step-five determination to be made;

2.  Even if the term "significant" can be defined by adjudication, neither the ALJ nor the Commissioner presented a standard by which significance is to be assessed; and

3.  89,000 jobs in the national economy is not a significant number of jobs. On this point, she relies primarily on an

unpublished decision, *Sally S. v. Berryhill*, 2019 WL 3335033, at *11 (N.D. Ind. July 23, 2019), in which the district court held that the Commissioner had not presented substantial evidence that 120,350 jobs nationwide, 0.08% of jobs, was a "significant" number.

Initially, we consider the Commissioner's position that Milhem has waived the first and third of these arguments.

### A. Waiver

Milhem waived her first argument, the Commissioner reasons, because she failed to present it to the district court. "Arguments not raised in the district court are waived." *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 485 n.30 (7th Cir. 2022). Milhem did not argue in the district court that the term "significant" must be defined by regulation before an ALJ can make a step-five determination, so we agree with the Commissioner on this point.

*Plessinger v. Berryhill*, 900 F.3d 909 (7th Cir. 2018), which Milhem cites, is not to the contrary. There, we observed that we had previously treated as preserved "more specific arguments" of the same nature as those raised in the district court, citing *Arnett v. Astrue*, 676 F.3d 586, 593–94 (7th Cir. 2012). *Plessinger*, 900 F.3d at 916–17. We expressly declined to "reach a definitive conclusion on the issue of waiver" in *Plessinger*. *Id.* at 917. In *Arnett*, we explained that because a claimant had challenged the ALJ's residual functional capacity determination overall, the claimant had not waived the argument that this determination did not specifically address how often the claimant was able to sit and stand. 676 F.3d at 593.

Milhem challenged the ALJ's significance finding below. She therefore preserved more specific arguments about the

significance determination, but not the broader first argument she raises here. She not only argues that the significance finding was wrong, but that the process to determine significance is flawed. Specifically, Milhem contends that no ALJ can determine significance via adjudication until the term "significant" is further defined by regulation. This first argument expands the scope of her challenge to the ALJ's significance finding and is therefore waived.

The Commissioner argues Milhem waived her third argument in two ways. She failed to object to the ALJ's step-five analysis at the administrative hearing. In support, the Commissioner relies on *Brown v. Colvin*, 845 F.3d 247 (7th Cir. 2016), *Liskowitz v. Astrue*, 559 F.3d 736 (7th Cir. 2009), and *Barrett v. Barnhart*, 355 F.3d 1065 (7th Cir. 2004). These decisions do not support the Commissioner's position, however, because they involve challenges to the vocational expert's estimates of the number of positions the claimant could perform given her limitations or the sources of information from which these estimates derived. *See Brown*, 845 F.3d at 254; *Liskowitz*, 559 F.3d at 744; *Barrett*, 35 F.3d at 1067. Milhem does not challenge the vocational expert's testimony about the number of jobs she can perform or the bases for those estimates. Rather, her third argument challenges the ALJ's ultimate finding that the number of jobs available is "significant" for purposes of the step-five analysis. Milhem raised this third argument before the district court, so it has not been waived.

The Commissioner also submits that Milhem waived her third argument because if she had challenged the ALJ's significance finding at her hearing, the vocational expert could have provided additional testimony. But because the significance determination was made only after the hearing had

concluded, Milhem did not waive her third argument that 89,000 jobs is not a "significant" number of jobs for purposes of the step-five determination.

### B. Merits

We turn now to the merits of Milhem's second and third arguments. The district court's decision is reviewed de novo, and the ALJ's disability decision will be affirmed if she supported her conclusion with substantial evidence. *Prill*, 23 F.4th at 746. "Substantial evidence is not a high threshold, as it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021)); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). This court does not substitute its judgment for that of the ALJ, reweigh the evidence, or decide questions of credibility. *Prill*, 23 F.4th at 746.

At step five, the ALJ is granted discretion to determine what constitutes a "significant" number of jobs on a case-by-case basis. The Commissioner is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); s*ee also Weatherbee*, 649 F.3d at 569. Whether a claimant "can make an adjustment to [this] other work" is determined by the ALJ based on a residual functional capacity assessment and the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), 404.1520(g)(1), 416.920(a)(4)(v), 416.920(g)(1). In this assessment, "ALJs often rely heavily on two sources of occupational information to determine whether the government has met its burden: the *DOT* and Vocational Experts." *Weatherbee*, 649 F.3d at 569. The *DOT* "classifies jobs based on a number of

factors, such as worker actions, exertional level and skill requirements in order to facilitate the placement of applicants in positions that match their qualifications." *Id.* Vocational experts, in turn "supplement the information provided in the *DOT* by providing an impartial assessment of the types of occupations in which claimants can work and the availability of positions in such occupations." *Id.* The ALJ must assess whether this evidence establishes more than "[i]solated jobs that exist only in very limited numbers in relatively few locations." 20 C.F.R. §§ 404.1566(b), 416.966(b).

*No standard for "significant."* Milhem's second argument is that the ALJ's step-five decision was erroneous because neither the Commissioner nor the ALJ presented a standard by which significance is to be assessed. But the statutory and regulatory framework contains no such requirement. Title 42 U.S.C. § 405(a) requires the Commissioner of Social Security to "adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence … ." The Commissioner has provided that "[w]ork exists in the national economy when there is a significant number of jobs." 20 C.F.R. §§ 404.1566(b), 416.966(b). "Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] live[s] are not considered 'work which exists in the national economy.'" § 404.1566(b); *see also* § 416.966(b). Therefore, work that exists "in very limited numbers" cannot be considered "significant." It is within the ALJ's discretion to determine whether jobs exist only in very limited numbers. *See Biestek*, 139 S. Ct. at 1152 (citing 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1), 404.1566, 416.966). This determination does not depend upon the establishment of a standard for significance.

Milhem's second argument is also rejected in light of the Supreme Court's approach to categorical rules in Social Security hearings. The Court has observed that these hearings are "informal," that "strict rules of evidence, applicable in the courtroom" do not apply, and that the "substantial evidence" standard is assessed on a "case-by-case" basis. *Id.* at 1154–55, 1157 (quoting *Richardson*, 402 U.S. at 400). In *Biestek*, the Court rejected an argument that would have established a categorical rule that substantial evidence could not be shown whenever a vocational expert refuses a request for data underlying her job estimates. *See id.* at 1157. The Court similarly observed in *Biestek* that it had formerly declined to adopt a categorical rule addressing the substantiality of medical reports in Social Security hearings. *See id.* (citing *Richardson*, 402 U.S. at 399, 410). Milhem's argument that the Commissioner failed to meet its burden because no evidence of a standard for significance was presented might imply a categorical rule, an unnecessary step here.

*89,000 jobs is not a "significant" number.* Milhelm's third argument is that the aggregate number of jobs the ALJ determined that she could perform—89,000 nationwide—is not a significant number. She notes that figure is only 0.0567% of the total jobs in the national economy. For support she looks to an unpublished decision, *Sally S.*, 2019 WL 3335033, at *11, in which the district court determined that 120,350 jobs, or 0.080% of all jobs in the national economy, was not a "significant" number.

Milhem's reliance on *Sally S.* is misplaced. There, the district court held that the Commissioner had not presented substantial evidence establishing significance because the Commissioner did not cite any cases discussing national, as

opposed to regional, numbers of jobs in its briefing before that court. *Id.* That decision is not binding on this court and does not account for this court's decision in *Weatherbee*, where we concluded that 140,000 national jobs was a "significant" number under step five of the analysis. 649 F.3d at 572.

The district court in *Sally S.* was properly attentive to the difference between regional versus national numbers of jobs. But our case law addressing what constitutes a "significant" number of jobs has sometimes conflated those figures. For example, in *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009), this court stated that 4,000 regional jobs satisfied the Commissioner's step-five burden, observing that "it appears to be well-established that 1,000 jobs is a significant number." For this proposition, *Liskowitz* relied on *Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993), as well as *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988), *Barker v. Secretary of Health & Human Services*, 882 F.2d 1474, 1479 (9th Cir. 1989), *Trimiar v. Sullivan*, 966 F.2d 1326, 1330–32 (10th Cir. 1992), and *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988). But these decisions discussed numbers of jobs in the regional rather than the national economy. *Lee*, 988 F.2d at 792, 794; *Trimiar*, 966 F.2d at 1330, 1330 n.10; *Barker*, 882 F.2d at 1476, 1478[3]; *Hall*, 837 F.2d at 273; *Jenkins*, 861 F.2d at 1087. Similarly, in *Weatherbee*, this court

---

[3] The court in *Barker* refers at one point to jobs that "existed in the national and local economy." 882 F.2d at 1478. This reference appears to acknowledge that work "which exists in the national economy" is defined as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.* (quoting 42 U.S.C. § 423(d)(2)(A)). Even if the 1,200 gatekeeper jobs discussed in *Barker* reflected a national number, that court's conclusion that 1,266 jobs were "significant" included only jobs in the local economy. *Id.* at 1476, 1479. *Liskowitz*, in turn, relied on the 1,266 figure. *See* 559 F.3d at 743.

referred to the 1,000-job figure when discussing regional and national numbers of jobs, but ultimately determined that 140,000 national jobs was "significant" under step five. 649 F.3d at 572. Subsequent decisions from this court have imprecisely cited *Liskowitz* and *Weatherbee* for the proposition that 1,000 jobs in the *national* economy meets the threshold of significance.[4] Moving forward, reviewing courts should be attentive to the difference between regional and national job numbers in this discussion.

In determining whether there is a "significant" number of jobs in the national economy, the regulatory scheme gives the ALJ discretion to decide, using substantial evidence, when a number of jobs qualifies as significant. Substantial evidence means "evidence a reasonable person would accept as adequate to support the decision." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

Milhem does not dispute the substantive correctness of the vocational expert's testimony—only whether the ALJ had sufficient evidence from that testimony to find Milhem not disabled. The vocational expert provided the ALJ with plenty of evidence that Milhem could perform 89,000 jobs. The ALJ grounded her conclusion that the number of jobs mentioned was "significant" on her consideration of Milhem's "age, education, work experience, and residual functional capacity" and that Milhem was "capable of making a successful adjustment to other work that exists" in the economy. The ALJ's hypotheticals to the vocational expert revealed that she weighed the testimony presented and determined that Milhem could

---

[4] *See, e.g.*, *Mitchell v. Kijakazi*, 2021 WL 3086194, at *3 (7th Cir. July 22, 2021); *Primm v. Saul*, 789 F. App'x 539, 546 (7th Cir. 2019).

at least perform sedentary work. The ALJ further assessed the tolerance for absences in these positions, the requirements for being on task in the workplace, and the frequency of breaks during the workday, all reflecting the ALJ's conclusions about Milhem's capacity to perform work. On this record, a reasonable person would accept 89,000 jobs in the national economy as being a significant number.

Our circuit's case law does not provide a clear baseline for how many jobs are needed. *Weatherbee*, in which we concluded that 140,000 jobs in the national economy was "well above the threshold for significance," 649 F.3d at 572, is this court's only guidepost. Still, the job figure the ALJ arrived at here of 89,000 was supported by the substantial evidence noted above. Milhem does not challenge the vocational expert's testimony, which was responsive to the ALJ's questions addressing Milhem's capacity to perform work. This ruling is also in accord with the numbers of national jobs held to be significant by other circuits. *See Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022) (32,000 national jobs); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (25,000 national jobs); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (10,000 national jobs); *Weiler v. Apfel*, 179 F.3d 1107, 1110–11 (8th Cir. 1999) (32,000 national jobs).

For these reasons, we AFFIRM the district court's decision.